17-CV-01403

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

In re
CITY WIDE INVESTMENTS, LLC,

                               Bankruptcy Court Case No.
                               17-22990-svk (Chapter 11)

        Debtor.

---

CITY OF MILWAUKEE,

        Appellant,

  v.                       District Court Case No. 2:17-cv-01403-pp

CITY WIDE INVESTMENTS, LLC,

        Appellee.

---

An appeal from the Judgment of the United States Bankruptcy Court, the
Honorable Susan V. Kelley, Presiding, Adversary No. 17-02115-svk

---

REPLY BRIEF OF APPELLANT, CITY OF MILWAUKEE

---

GRANT F. LANGLEY
City Attorney

HANNAH R. JAHN
 Assistant City Attorney
State Bar No. 1088851
Attorneys for City of Milwaukee

<u>Address:</u>
200 E. Wells St. Room 800
Milwaukee, WI 53202
(414) 286-2601
hjahn@milwaukee.gov

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................3

ARGUMENT ..............................................................................................................5

I.   The City's appeal to equity is not a new issue on appeal; even if it were, this Court may apply § 105 to consider the equities of the Bankruptcy Court decision....5

II.   The Debtor appeals to the equitable nature of bankruptcy court in its response brief with irrelevant condemnations of others for the occurrences that led to the *in rem* transfer. .....................................................................................................7

III.  Cases cited by the Debtor support the City's argument that a recent sale price is the best evidence of value.............................................................................11

CONCLUSION ........................................................................................................12

Case 2:17-cv-01403-PP   Filed 12/14/17   Page 2 of 13   Document 6

# TABLE OF AUTHORITIES

**Cases**

*Accord Still v. Hudson (In re Hudson Printing & Lithographing Co.),*
28 B.R. 876 (Bankr. E.D. Tenn. 1983) ............................................................11, 12

*Dean Witter Reynolds, Inc. v. Fernandez,*
741 F.2d 355 (11th Cir. 1984) .........................................................................5, 6

*Feltman v. Warmus (In re American Way Serv. Corp.),*
229 B.R. 496 (Bankr. S.D. Fla. 1999) ............................................................11, 12

*Hall v. Arthur Young & Co. (In re Computer Universe, Inc.),*
58 B.R. 28 (Bankr. M.D. Fla. 1986 ........................................................................11

*In re Stacy,* 167 B.R. 243 (N.D. Ala. 1994) ........................................................5, 6

*In re Winters*, 119 B.R. 283 (Bankr. M.D. Fla. 2003).............................................11

*Pritchard v. Brown (In re Brown),*
118 B.R. 57 (Bankr. N.D. Tex. 1990).....................................................................11

*Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868 (1976)...........................................6

*Official Comm. Of Unsecured Creditors of Tousa, Inc.v. Citicorp N. Am., Inc.*,
422 B.R. 783 (Bankr. S.D. Fla. 2009) ...................................................................11

**Statutes**

11 U.S.C. § 105...............................................................................................*passim*

11 U.S.C. § 550(a) ..........................................................................................5, 10

Milwaukee Code of Ordinances 200-01 ................................................................10

Milwaukee Code of Ordinances 200-03 ..................................................................8

Milwaukee Code of Ordinances 200-42 ..................................................................8

Case 2:17-cv-01403-PP   Filed 12/14/17   Page 3 of 13   Document 6

Wis. Stat. § 704.07(2) ................................................. 9

**Other References**

*"Mayor Tom Barrett: Milwaukee could lose 84 police officers due to budget shortfall,"*
Mary Spicuzza, Milwaukee Journal Sentinel, published 10:00pm CT June 10, 2017, Updated 3:48p.m. CT June 12, 2017, *available at* https://www.jsonline.com/story/news/local/milwaukee/2017/06/11/mayor-tom-barrett-milwaukee-could-lose-84-police-officers-due-budget-shortfall/385354001/ (last accessed December 13, 2017). ........................................ 7

"'Evicted' depicts Milwaukeeans struggling to find affordable housing," Jim Higgins, Milwaukee Journal Sentinel, published February 26, 2016, *available at* http://archive.jsonline.com/entertainment/books/evicted-depicts-milwaukeeans-struggling-to-find-affordable-housing-b99673566z1-370263081.html (last accessed December 13, 2017)................................................. 7

## ARGUMENT

**I.      The City's appeal to equity is not a new issue on appeal; even if it were, this Court may apply § 105 to consider the equities of the Bankruptcy Court decision.**

The Debtor alleges that City argues the applicability of 11 U.S.C. § 105 for the first time on appeal. (Appellee Br. At 14) However, the City has argued consistently that the Court should consider the actual subsequent sale price of $150,000 as evidence of "value" to be paid under § 550(a). (*See* R. 3 at 2, Tr. 131:17-132:2, Tr. 133:3-4) The concepts of § 105 have been implicitly referenced.

But, an appeal to equity would be appropriate even if it were a new issue on appeal. Section 105 describes the Court's ability to act; it is not a separate cause of action. "*Except for questions concerning the power of the court to order relief, an appellate court generally will not consider a legal issue or theory unless it was presented to the trial court.*" *In re Stacy*, 167 B.R. 243, 247 (N.D. Ala. 1994) (emphasis added), citing *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360 (11th Cir.1984). Further, the principle against considering new issues on appeal is "not a jurisdictional limitation but merely a rule of practice." *Dean Witter Reynolds*, 741 F.2d at 360. "The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. We announce no

5

general rule." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S. Ct. 2868, 2877 (1976).

Courts have specified five exceptions to that rule:

> First, an appellate court will "consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance "where the interest of substantial justice is at stake." Fourth, "a federal appellate court is justified in resolving an issue not passed on below ... where the proper resolution is beyond any doubt." Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*In re Stacy, supra, citing Dean Witter Reynolds,* 741 F.2d at 360–61.

Here, the first and fifth exceptions apply. To the first exception, the definition of the bankruptcy court as a court of equity is a pure question of law. It is self-explanatory that a court may exercise its equitable powers and thereby further the cause of justice; it is also apparent that if the court fails to consider the equities of its decision here, the result would be a miscarriage of justice. As a result of the Bankruptcy Court's decision, rental property owners will be further encouraged to neglect paying property tax for years, to allow properties to deteriorate, to extract the rental income as long as they can without fulfilling their responsibilities to the City and its citizens, with the knowledge they can then simply file bankruptcy to quickly nullify the consequences.

6

Applying the fifth exception, the present matter does provide significant questions of general impact. The City and the Bankruptcy Court will likely see the same issue arise in future years as property owners fail to pay their real estate property tax, the City continues to foreclose through the in rem process, and those potential debtors become more familiar with the remedy of filing a bankruptcy petition and adversary complaint. And, it is logical to predict that the parties may disagree on the value of a property transferred. An issue of great public concern at the heart of the matter is the City's funding of the budget through tax collection. The issues of adequate funding for police and firefighters, prevention of blight, and availability of affordable housing are some of the biggest issues of public concern in the City of Milwaukee today.[1]

## II.  The Debtor appeals to the equitable nature of bankruptcy court in its response brief with irrelevant condemnations of others for the occurrences that led to the *in rem* transfer.

Despite objecting to the City's having raised questions of equity, the Debtor also appeals to Court's sense of fairness and equity at trial and in the response brief

---

[1]  The Court may take judicial notice of the budget issues the City faces in 2018. *See, e.g.,* "Mayor Tom Barrett: Milwaukee could lose 84 police officers due to budget shortfall," Mary Spicuzza, Milwaukee Journal Sentinel, published 10:00pm CT June 10, 2017, Updated 3:48p.m. CT June 12, 2017, *available at* https://www.jsonline.com/story/news/local/milwaukee/2017/06/11/mayor-tom-barrett-milwaukee-could-lose-84-police-officers-due-budget-shortfall/385354001/ (last accessed December 13, 2017). *See also, e.g.* "'Evicted' depicts Milwaukeeans struggling to find affordable housing," Jim Higgins, Milwaukee Journal Sentinel, published February 26, 2016, *available at* http://archive.jsonline.com/entertainment/books/evicted-depicts-milwaukeeans-struggling-to-find-affordable-housing-b99673566z1-370263081.html (last accessed December 13, 2017).

by describing as "tragic" the circumstances that befell it. (*E.g.* Tr. 123:20-21) The Debtor presents itself as a victim of chance and of the whims of public employees, and its response brief reads as a laundry list of grievances. However, the Debtor's allegations are at times misleading and at other times irrelevant. And, at many steps along the journey to tax foreclosure and afterward, the Debtor failed to act to protect its own interests.

The Debtor first places the blame for the building's prolonged vacancy on the City Department of Neighborhood Services (DNS) as it "refused" to grant an occupancy permit before all code violations were abated. (Appellee Br. at 3) Whether DNS may grant an occupancy permit in this situation is not a matter of discretion. City Ordinance requires that all code violations be abated before occupancy permits are granted (MCO 200-03)[2], and that new occupancy permits are required where a building was formerly found unfit for human habitation (MCO 200-42.2.c.)[3] The Debtor falsely intimates that the City employees charged with enforcing building code did so arbitrarily, presenting enforcement actions as what the inspectors "wanted" to do. (Appellee Br. at 3, 8) The Debtor could have

---

[2]     "No building, structure, equipment or premises shall be … occupied or used, or maintained… except in conformity with this code or any authorized rule or approval of the commissioner."

[3]     "Unless and until a new certificate of occupancy has been issued by the commissioner, it shall be unlawful to occupy any building, structure or premises or part thereof which is vacant under any of the following circumstances: c-1. It has been found unfit for human habitation or use under any order issued in accordance with this code requiring the repair, alteration, vacation, removal or demolition."

8

mitigated the vacant period, and the ensuing inability to general rental income, by repairing the violations sooner and scheduling an inspection for the occupancy permit.

Instead, the Debtor continually implies that certain violations were minor and did not merit withholding of an occupancy permit. (Appellee Br. At 4, 8, 18, 20) The Debtor strains the facts by alleging that the "City did not 'placard' the Property because of any building code violation for which City Wide was at fault." (Appellee Br. at 18) Landlords are required to maintain their properties. Wis. Stat. § 704.07(2). The proximate cause of the vacant status of the building, any attendant vandalism, and subsequent failure of the Debtor to earn rental income during that period, is the Debtor itself.

Next, the Debtor claims that the City's placarding of the building caused the vandalism. (Appellee Br. at 4, 19). In fact, vandalism occurred only during the Debtor's ownership. (Tr. 97:5-10) The Debtor was responsible for security of the property. The risk of vandalism illustrated here serves to justify the City's decision to sell the property quickly. (Tr. 97:5-10)

The Debtor stretches the truth when claiming that it "paid the underlying real estate taxes on the Property each year." (Appellee Br. at 5) The Debtor faults the Municipal Court and Judge Mosley for not providing a settlement offer in time to reduce the municipal court judgment before the tax foreclosure was complete.

(Appellee Br. at 5, 6)  Reliance on a scheme of neglecting legal duties in hopes of later forgiveness is no defense.  It is also irrelevant whether First Citizens Bank promised Mr. Nazario a representative would attend the hearing to vacate the *in rem* foreclosure. (See Appellee Br. at 6, 7) Again, Mr. Nazario and the Debtor gambled and lost.

The facts embellished by the Debtor in its response brief continue.  The Debtor speculates when it claims that the City walked away from a quarter million dollars by accepting the first offer.  (Appellee Br. at 12)  In fact, the Bankruptcy Court received no evidence to show that the City turned down any potential buyers or that a second offer was ever made.  (Tr. 105:16-19) No link has been established between the Alderwoman's involvement and the ultimate sale price.  It is irrelevant to the property's value that John Nazario was "looking to list" the property for $380,000.00 as he never did.  (Appellee Br. at 19)

Equally unhelpful are the Debtor's policy recommendations.  The Debtor apparently finds the applicable City Ordinances too onerous. (Appellee Br. At 20) The Debtor's motivations in requesting a relaxation of the standards for landlords are self-serving, while the City's building code and enforcement mechanism was enacted to promote the health, safety, and welfare of Milwaukee residents. (MCO 200-01)  It is irrelevant whether a building owner, its counsel, or even this Court, personally agree with the building code.  Overall, the Debtor argues dubiously that

10

an application of equitable principles by this Court favors punishing the City for its lack of business acumen and audacity of enforcing the building code while at the same time asking the Court to insulate the Debtor from the consequences of violating the building code and repeatedly choosing to ignore taxes and other responsibilities. (Appellee Br. At 20)

### III. Cases cited by the Debtor support the City's argument that a recent sale price is the best evidence of value.

Few cases reference valuation under § 550(a) in the context of a *constructively* fraudulent transfer. The case most analogous to the current situation remains *In re Winters*, in which the subsequent sale by the foreclosing mortgage lender to a third party was found to be the fair market value of the property. 119 B.R. 283 (Bankr. M.D. Fla. 2003) While the Debtor cites an impressive string of cases purporting to support its claim that "value" under § 550 (a) is always defined as "fair market value," some of the cases cited do not use the phrases "fair market value" or "market value" at all.[4] Other cases cited by the Debtor held that the subsequent sale price *was* the best evidence of fair market value. *See Feltman v.*

---

[4]     *Pritchard v. Brown (In re Brown),* 118 B.R. 57 (Bankr. N.D. Tex. 1990); *Hall v. Arthur Young & Co. (In re Computer Universe, Inc.),* 58 B.R. 28 (Bankr. M.D. Fla. 1986); *Accord Still v. Hudson (In re Hudson Printing & Lithographing Co.),* 28 B.R. 876 (Bankr. E.D. Tenn. 1983). Appellant was unable to find the reference in *Official Comm. Of Unsecured Creditors of Tousa, Inc.v. Citicorp N. Am., Inc.*, because the page numbers cited (883-884) seem to be typed in error. 422 B.R. 783 (Bankr. S.D. Fla. 2009)

*Warmus (In re American Way Serv. Corp.),* 229 B.R. 496, 533 (Bankr. S.D. Fla. 1999); *Accord Still v. Hudson (In re Hudson Printing & Lithographing Co.),* 28 B.R. 876 (Bankr. E.D. Tenn. 1983).

The subsequent transfer is a more accurate indication of value than is the Debtor's appraisal. Mr. Stiloski's hypothetical eight-unit apartment building was not in imminent danger of being foreclosed upon, as the Michele Street property was. If it were, the owner would be forced to sell it more quickly in order to avoid foreclosure, and the resulting sale would be defined a distressed sale. A seller who is forced to sell quickly to pay its debts may be required to take the first offer instead of leaving the property on the market long enough to maximize the purchase price. Mr. Stiloski described such a distressed sale at trial. (Tr. 49:11-17) If the subject property could easily have been sold on the private market for $340,000, $380,000 or even $410,000, it is unexplained why the Debtor did not list the property within the two years before the involuntary transfer, nor why the lender did not protect its secured lien.

## CONCLUSION

In conclusion, this Court is within its bounds to overturn the Bankruptcy Court's decision to prevent a windfall to the Debtor. The Bankruptcy Court erred in awarding a judgment for a value that did not reflect actual circumstances. The

policy repercussions of the Bankruptcy Court's decision cannot be overstated, especially given the Debtor's expressed disdain for the building code and the real estate tax. Landlords will be further encouraged by the Bankruptcy Court's decision to neglect their duties to the City and its residents, should this Court not apply equitable principles to prevent an imbalanced result.

GRANT F. LANGLEY
City Attorney

/s/ HANNAH R. JAHN
 Assistant City Attorney
State Bar No. 1088851
Attorneys for Appellant City of Milwaukee
200 E. Wells St. Room 800
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-3967
E-mail: hjahn@milwaukee.gov
