UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CITY OF MILWAUKEE,

    Appellant,

  v.              Case No. 17-cv-1403-bhl

CITY WIDE INVESTMENTS, LLC,

    Appellee.

---

## DECISION AND ORDER

  The City of Milwaukee (City) appeals a bankruptcy court judgment entered in favor of Chapter 11 Debtor-In-Possession, City Wide Investments, LLC (City Wide). *See In re City Wide Investments, LLC*, Case No. 17-22900-svk, *City Wide Investments, LLC v. City of Milwaukee*, Adv. No. 17-2115-svk (Bankr. E.D. Wis. October 3, 2017). Following a trial, the bankruptcy court ruled that the City's pre-bankruptcy seizure, through an *in rem* tax foreclosure proceeding, of an apartment complex owned by City Wide, was a fraudulent transfer under 11 U.S.C. §548(a)(1)(B), and, as a remedy, awarded City Wide $280,894.56, a sum calculated based on the court's determination of the fair market value of the apartment building at the time of the improper transfer, less amounts City Wide owed the City for outstanding taxes, fines and associated costs.

  On appeal, the City primarily complains about the remedy the bankruptcy court awarded City Wide for the fraudulent transfer under 11 U.S.C. §550(a). According to the City, the $280,894.56 monetary award offends equitable principles by giving City Wide an unfair windfall while simultaneously imposing an unfair penalty on the City. The City insists the award should have been based on the value the City was able to realize when it resold the apartment complex at a foreclosure sale prior to City Wide's bankruptcy. Having considered the issues raised in this appeal, the arguments of the parties, the relevant portions of the record, and the applicable

principles of law, the Court finds no need for oral argument and, for the reasons that follow, affirms the bankruptcy court's decision.

## BACKGROUND

City Wide is a limited liability company that owns various rental properties in Milwaukee. Prior to January 4, 2016, City Wide's holdings included an eight-family apartment building located at 8940 North Michele Street. When City Wide failed to pay more than $49,000 in property taxes, fines, and associated costs on the property for the years 2012 through 2015, the City initiated an *in rem* tax foreclosure proceeding and, on January 4, 2016, succeeded in obtaining title to the property. A little more than a year later, on March 17, 2017, the City sold the property to a third-party buyer for $150,000, a recovery that was much greater than the $49,000 in property taxes, fines and costs that City Wide had been forgiven in exchange for the City's seizure of the property. But the recovery was also lower than the $217,600 value the City had assigned the property for 2016 tax assessment purposes. (*See* Appraisal of Steve Stiloski of Commercial Property Consultants, City Wide Exhibit B at 15, ECF No. 4-5.) Prior to the sale, the property had been vacant and was placarded as unfit for human habitation for an extended period (two years).

Just weeks after the City sold the property, on April 3, 2017, City Wide filed for bankruptcy. In the bankruptcy court, City Wide began an adversary proceeding against the City to set aside the tax foreclosure as a constructively fraudulent transfer pursuant to 11 U.S.C. §548(a)(1)(B). The City answered, denying City Wide's claims, and the bankruptcy court held a bench trial.

The primary issue at trial was the value of the apartment complex. City Wide introduced testimony from appraiser Steven Stiloski, who opined that the fee simple market value of the property at the time of the transfer was $340,000. Stiloski explained that he performed a retrospective appraisal by looking at comparable sales completed around the time of the transfer. Because it was a rental property, he employed both income capitalization and sales comparison approaches. Applying two capitalization rates, he arrived at a value range between $340,000 and $360,000. Starting with a $350,000 value, he subtracted deferred maintenance costs and arrived at a value of $340,000. In his sales comparison analysis, Stiloski reviewed four sales within the

property's general location and, after adjustments, arrived at a value of $340,000 for the property, after again accounting for $10,000 in deferred maintenance.

In response, the City introduced testimony from Dwayne Edwards, a real estate specialist from its Department of City Development, who contended the best evidence of the property's value was its recent sale to a third party for $150,000. To support this valuation, Edwards testified about the process the City followed in selling the property. He explained that he visited the property in March of 2016 and took photographs of its condition. In May, a Department of Neighborhood Services inspector visited the property and prepared a Scope of Work document. Then, in June, Edwards's department prepared a listing sheet to market the property and provided the listing sheet to the local alderwoman for her approval. Edwards testified that his department does not begin marketing a property until an alderperson has agreed to support the sale along with an actual proposal because any proposal must go before the Common Council. Thus, the City did not start marketing the property until a buyer was lined up. The eventual buyer contacted Edwards's department in late October 2016 after learning about the property from a City inspector. Edwards advised the potential buyer that the property was not ready to market because the department had not yet received support from the alderwoman. He encouraged the buyer to sign up to receive a notification when the property was listed on the City's website. Later in October, the alderwoman agreed to sponsor the sale. The property was then listed with a sale price of $175,000 on the City's website in December 2016. Edwards testified that his department usually arrived at a listing price after looking at recent market data. He stated the assessed value of the property was a little more than $200,000, and his staff reduced that amount based on the Scope of Work prepared by the Department of Neighborhood Services inspector.

The bankruptcy court took the case under advisement and later issued a written decision, confirming that City Wide had not received reasonably equivalent value for the City's seizure of the property. While the City obtained title to the property through the foreclosure, City Wide received only the elimination of its $49,000 tax debt. As a remedy under section 550(a), the bankruptcy court concluded City Wide was entitled to the "value" of the property. An order that the City return the property to City Wide was not possible because the City had already resold the apartment building.

The bankruptcy court noted "[s]ection 550(a) does not define 'value,' but courts agree that the relevant value is the fair market value at the time the property was transferred." (Memorandum Decision at 5.) The court then analyzed the competing valuation evidence in some detail. It did not find major fault with either party's witnesses, noting "Mr. Stiloski was a credible witness" (*Id*.), and Mr. Edwards "does a terrific job." (Trial Tr. at 132:4-5.) But the bankruptcy court ultimately rejected the valuation suggested by the City and, instead, largely accepted the testimony of City Wide's appraiser. The court concluded the fair market value of the property at the time of the transfer was $330,000. After subtracting the consideration City Wide received in the form of debt forgiveness, which the parties agreed was $49,105.44, the bankruptcy court found the City received a constructively fraudulent transfer in the amount of $280,894.56 and entered judgment accordingly.

## ANALYSIS

This Court has jurisdiction over the appeal of the bankruptcy court's order under 28 U.S.C. §158(a). The Court reviews the bankruptcy court's valuation determination under 11 U.S.C. §550(a) for abuse of discretion but applies a clear error standard to the bankruptcy court's factual findings. *In re Veluchamy*, 879 F.3d 808, 823 (7th Cir. 2018). "'Abuse of discretion means a serious error of judgment, such as reliance on a forbidden factor or failure to consider an essential factor.'" *Id*. (quoting *Powell v. AT & T Commc'n*, 938 F.2d 823, 825 (7th Cir. 1991)). "A lower court 'abuses its discretion when it commits an error of law or makes a clearly erroneous finding of fact.'" *Id*. (quoting *Kress v. CCA of Tenn., LLC*, 694 F.3d 890, 892 (7th Cir. 2012)).

Section 548(a)(1) of the Bankruptcy Code allows courts to set aside a sale or transfer of an insolvent debtor's property if the transfer was constructively fraudulent. More specifically, a transfer may be avoided if it was "made or incurred on or within 2 years before the date" of the debtor's bankruptcy petition, the debtor "received less than a reasonably equivalent value in exchange for such transfer," and the debtor was insolvent on the date of the transfer or became insolvent as a result of it. 11 U.S.C. §548(a)(1). If a bankruptcy court avoids a fraudulent transfer of property, 11 U.S.C. §550(a) provides the potential remedies: the debtor-in-possession may receive either the return of the property transferred or "the value of such property" from the transferee.

The central dispute between City Wide and the City, both in the bankruptcy court and on appeal, concerns valuation. As the bankruptcy court noted prior to trial, the only disputed element of City Wide's fraudulent transfer claim was whether City Wide had received "reasonably equivalent value" when the City seized the property in exchange for the $49,000 in overdue taxes and fines. Valuation was also central to the potential remedy. Because the apartment complex had been sold and could not be recovered, the bankruptcy court concluded City Wide was entitled to the "value" of the property under section 550(a). On appeal, the City challenges the bankruptcy court's valuation conclusions. Because the record does not show any abuse of discretion or legal error by the bankruptcy court, its valuation findings and the resulting judgment must be affirmed.

### A. The City's Invocation of "Equity" Is Not a Basis to Overturn the Bankruptcy Court's Valuation Determination.

The City's lead arguments on appeal consist of broad pleas for "equity." The City calls the bankruptcy court a "court of equity" and complains that the result of the bankruptcy court's valuation finding is "inequitable." It insists that the value of the apartment building under section 550(a) must be analyzed with this understanding – that bankruptcy courts are courts of equity and that fraudulent conveyance law is equitable in nature. The City then argues that the bankruptcy court's valuation determination is inequitable because it provides City Wide with a windfall of almost three times the profit the City earned when it sold the property to a third-party buyer after the foreclosure.

While there is a long history of characterizing the bankruptcy courts as "courts of equity," *see, e.g., Katchen v. Landy*, 382 U.S. 323, 327 (1966), that label is not terribly helpful. Invoking equity does not provide a substantive legal basis for overturning the bankruptcy court's legal conclusions or factual findings. The Supreme Court has "long held that 'whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of' the Bankruptcy Code." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988)). Thus, a bankruptcy court must of course act consistent with the express provisions of the Bankruptcy Code, and its rulings are subject to reversal if it fails to do so. Beyond this uncontroversial point, however, the City's appeals to equity add little to the issues on appeal.

Similarly, the City's citation to section 105(a) of the Bankruptcy Code is also unavailing. While this section of the Code authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," it "'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Law v. Siegel*, 571 U.S. at 421 (quoting Collier on Bankruptcy ¶105.01[2] (16th ed. 2013)). Without pointing to a specific code provision that was violated, the mere invocation of section 105(a) adds nothing to the legal analysis required on appeal.

In the end, if the bankruptcy court correctly applied the relevant Bankruptcy Code provisions concerning City Wide's fraudulent transfer claim, neither general principles of equity nor section 105(a) are bases for overruling the bankruptcy court's determinations. The City's repeated pleas for equity thus simply beg the question. If the bankruptcy court followed the law and its valuation findings are factually supported, there is nothing legally improper or "inequitable" about its decision.

**B. The City's Legal Arguments Do Not Warrant Reversal of the Bankruptcy Court's Valuation Determinations.**

**1. There Was No Reversible Error in the Bankruptcy Court's Analysis of Sections 548(a)(1) and 550(a).**

In terms of actual legal errors, the City first complains that the bankruptcy court improperly conflated the term "reasonably equivalent value" under section 548(a)(1) with "the value of such property" under section 550(a). The City correctly notes that a bankruptcy court must find that a fraudulent transfer occurred under section 548(a), before determining a remedy under section 550(a). To the extent the bankruptcy court was less than clear in making separate determinations under these two different, but related provisions, the lack of clarity has not harmed the City and is not a basis for reversal.

The bankruptcy court's final conclusions do not specifically address the elements for avoiding the *in rem* tax foreclosure judgment under section 548(a)(1)(B) or include an express finding that the City's seizure of the property was for less than "reasonably equivalent value." But the record is clear that the bankruptcy court applied section 548(a)(1)(B) and implicitly concluded that the City's taking of the property was a fraudulent transfer and that City Wide did not receive reasonably equivalent value. In the first paragraph of its decision, the bankruptcy court cited section 548(a)(1)(B) and stated that "the question" for trial was "whether the Debtor

received reasonably equivalent value for the transfer." The bankruptcy court then carefully discussed the competing evidence on valuation and explained its final valuation determination. To the extent the bankruptcy court failed to repeat the citation to section 548(a)(1)(B) or to use the phrase "reasonably equivalent value" in laying out its conclusions, this failure was at most a mere technical oversight that does not undercut the court's reasoning or prejudice the City. The omission likely resulted from the fact that no one, including the City, was seriously disputing this issue. While the bankruptcy court's final conclusions could have been stated with greater specificity, this failure is not reversable error. At most, it is a "clerical mistake" in the order, which can be remedied on the court's own initiative without affecting the merits of the appeal. *See* Fed. R. Civ. P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.").

### 2. The Bankruptcy Court's Valuation Determination Is Adequately Supported and Not Clearly Erroneous.

The City's only substantive challenge to the bankruptcy court's ruling is a complaint that the bankruptcy court should have adopted the City's proposed valuation rather than the debtor's valuation. The City complains that the bankruptcy court "should have interpreted the term 'value' in § 550(a)" as equal to the price the City obtained through its post-seizure sale of the property. (Appellant's Brief, ECF No. 3 at 26-27.) But the bankruptcy court's analysis contains no legal error.

The Bankruptcy Code does not define "value" for purposes of section 550(a). Nevertheless, valuation issues arise commonly at different stages of a bankruptcy case and the Supreme Court has repeatedly affirmed that valuation in bankruptcy depends on context. *E.g., Associates Commercial Corp. v. Rash*, 520 U.S. 953, 960 (1997) (recognizing under §506(a) collateral valued in light of purpose of valuation and proposed disposition or use of such property); *BFP v Resolution Trust Corp.*, 511 U.S. 531, 545 (1994) (concluding reasonably equivalent value for foreclosed property is generally price received at foreclosure sale, while reasonably equivalent value has independent meaning similar to fair market value outside of foreclosure context). The bankruptcy court correctly noted that courts generally agree that "value" in section 550 refers to "fair market value." (Memorandum Decision at 5); s*ee also* Richard Levin & Henry J Sommer, Collier on Bankruptcy ¶550.02[3][a] (16th ed. 2020). And the bankruptcy court was correct in granting City Wide a remedy based on the court's

determination of the fair market value of the property at the time ownership was transferred to the City.

The record also shows that the bankruptcy court acted within its proper factfinding role in arriving at a final valuation determination that is amply supported by the evidence. The court expressly rejected the $150,000 valuation suggested by the City and instead adopted the valuation of Steven Stiloski, the Debtor's appraiser, who opined – based on both income capitalization and sales comparison approaches – that the fee simple market value of the property at the time of the transfer was $340,000. (Memorandum Decision at 2, 5.) The court recognized that although the comparable properties Mr. Stiloski used in his analysis were not boarded up, and he did not review open building code violations, he took the property's deferred maintenance into account. He also testified that the rental market was strong and the fact that the property was not occupied at the time of the transfer would not have had a significant negative impact on its value. (*Id*. at 5.)

The bankruptcy court also found John Nazario, City Wide's sole member, a credible witness. Mr. Nazario testified regarding the condition of the property at the time of the transfer. Not only had substantial repairs been completed, four of the units in the building were ready to rent and three of the units were ready except for the installation of carpeting. While the eighth unit had been deconstructed and was being rebuilt, Mr. Nazario estimated that the cost to make the building fully rentable was about $6,700, not the $43,040 estimate prepared by the City on a "Scope of Work." (Memorandum Decision at 2, 6.) The bankruptcy court also found credible the testimony of Neil Bliese, a contractor who had performed work for the Debtor, and estimated it would have cost $5,000 to eliminate code violations and make the property rental-ready. (*Id*.) Based on the testimony and the photographs of the building introduced by the City, the bankruptcy court determined the building required only modest repairs with an approximate cost of $20,000 to bring the property into rentable condition. (*Id*. at 5-6.)

The bankruptcy court even took into consideration the testimony of Dwayne Edwards, a real estate specialist for the Department of City Development, who said the building was in the best condition of the properties in his portfolio of City-owned properties. (*Id*. at 3.) The court ultimately concluded that the approximate cost to bring the property into rentable condition was $20,000. Because Mr. Stiloski's appraisal already deducted $10,000 to account for deferred

maintenance, the court deducted another $10,000 from his $340,000 opinion of value, and determined the fair market value of the property at the time of the transfer was $330,000. (*Id*. at 6.) These factual findings are adequately supported by testimony in the record and this Court cannot conclude that any of the findings are clearly erroneous sufficient to warrant reversal.

The bankruptcy court's rejection of the City's proposed valuation was not a legal error. While the Supreme Court has confirmed that in some circumstances, a debtor will have received "reasonably equivalent value" when a property is sold pursuant to state approved procedures in a foreclosure sale, *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994), that holding is not applicable here. It is undisputed that the value City Wide received from the *in rem* tax foreclosure was the forgiveness of the $49,105.44 debt it owed to the City. The City never suggested that this debt forgiveness was the reasonable equivalent of the "value" of the property at the time of the transfer. Indeed, the City's own expert testified to a much higher value at trial.

The City's appellate arguments thus amount to little more than complaints that the bankruptcy court accepted City Wide's witnesses' testimony on valuation as more credible than the testimony and argument offered by the City. But dissatisfaction with a trial court's properly supported factual findings is not a basis for reversal on appeal. Clearly, the City's procedures for the sale of tax foreclosed properties do not always realize the best prices. The City does not sell foreclosed properties at auction and it typically does not list its foreclosed properties with a real estate broker. The City has only itself to blame for any problems arising from its own chosen procedures for foreclosing on and selling properties with overdue taxes. The bankruptcy court's refusal to find that the $150,000 sale price was the appropriate measure of "value" under section 550(a) is not reversible error.

## CONCLUSION

For the reasons stated above, the bankruptcy court's decision is AFFIRMED and the Appellee's Motion for Expedited Consideration of Appeal (ECF No. 7) is DENIED as moot.

SO ORDERED this 8th day of January, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
